UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ZELIA E. BROWN                                    CIVIL ACTION

VERSUS
                                                  NO. 07-931-JJB-SCR
ICF INTERNATIONAL, D/B/A
ICF INCORPORATED, LLC
OF LOUSIANA

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment (doc. 67) under Rule 56 of the Federal Rules of Civil Procedure. Parties have numerous briefs on the matter. Chief Judge Tyson heard oral argument on the motion.[1] This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, Defendant's motion is GRANTED. Defendant's request for attorney's fees is DENIED.

## Background

While much of the specifics of the events are disputed, the Court has pieced together the following narrative from the various pleadings: Plaintiff was hired by ICF as a Program Quality Specialist in October, 2006, after a telephone interview. ICF had been hired by the State of Louisiana to manage the Road Home Program to assist victims of Hurricanes Katrina and Rita. Her first day of work included a board meeting in Baton Rouge (a meeting ICF says was also a follow-up interview), Plaintiff alleges she was the only African-American person

_____

[1] This case was transferred to this Court after Chief Judge Tyson's death.

present and that one of her new supervisors, Vanessa Brower, made remarks to her that she deemed to be racial in nature.[2]  Also at the meeting, Plaintiff alleges the board members made disparaging statements about New Orleans residents, statements she interpreted to be racially based.  Plaintiff claims from the beginning of her employment through March 2007, she was sexually harassed by one of her fellow employees, W.B. Mitchell (an African-American male who may or may not have served as her supervisor at times).  Incidents included staring at her for an extended period of time and telling her he wanted to take her to Baskin Robbins so he could "lick her all over," which she took to be a sexual proposition. She reported this incident to senior management on March 17, 2007.

As agreed upon her hiring, Plaintiff was relocated to the New Orleans office in January, 2007.  Mitchell was also relocated there.  That month, Plaintiff had conversations with two of her supervisors, Bob Santucci and Daniel Holland, and came away from the conversations feeling the Baton Rouge members of ICF did not like her.  After this, Holland, an African-American male, began telling other employees she was to be avoided and not to follow her instructions.  She was excluded from at least two meetings she had been used to attending. Plaintiff alleges these actions effectively prevented her from doing her job.  She sent an email outlining her complaints on February 19, 2007 to Brower, Holland, and human resources. She also reported numerous irregularities with the

---

[2] Among the remarks: Brower said Plaintiff did not look like she "expected" and that if she had not moved to Houston from New Orleans, she would not "sound like she sounds" and would not "dress like she does."

Case 3:07-cv-00931-JJB -SCR   Document 115   11/15/11   Page 2 of 24

program, such as discriminatory housing, nepotism, and non-compliance with HUD regulations, as was part of her job.

During this time, Mitchell continued to harass her, primarily by following behind her singing a song, "I'm not Lisa," which is Plaintiff's nickname. She reported this behavior to Brower on March 17, 2009. This was the first time she reported this behavior. On March 19, Brower contacted human resources about the situation. Human resources conducted an investigation, the extensiveness of which is disputed. No disciplinary action was taken as a result. On March 27, after Mitchell made offensive remarks in a meeting about people from New Orleans (calling them stupid and dumb), Plaintiff complained to Brower. During a meeting with him about this, Mitchell left the company.[3] Sometime near the end of March, 2007, a Mr. Rodriguez took over as Compliance Manager, making him Plaintiff's manager. Plaintiff missed several days of work in late March and April, although the specifics are disputed.

On April 2, 2007, Plaintiff met with the director of human resources to complain about Mitchell's behavior, Brower's lack of communication, and Holland's telling others not to speak to her and how all of this affected her ability to do her job.

On April 5, Plaintiff filed a Charge of Discrimination with the EEOC. The EEOC sent ICF a Notice of Charge on April 10.

---

[3] ICF claims Mitchell resigned during this meeting; Ms. Brown claims this is an issue of dispute, as in his deposition Mitchell says only his departure was a "mutual agreement." (Doc. 83-4 at 15).

3

Also in April, Plaintiff drafted a "Timeline and Synopsis of the Small Rental Program" detailing alleged mismanagement and her claims of harassment, discrimination and retaliation.  She emailed this document to Senators David Vitter, Mary Landrieu, then-Congressman Bobby Jindal, and the Reverend Jesse Jackson and his Rainbow/PUSH Coalition.  She did not tell anyone at ICF about sending these emails.  Although she continued to receive work assignments from Rodriguez in April and May of 2007, Plaintiff contends the assignments given were clerical in nature and that her job duties were changed to require her to provide support to the other team members.  Specifically, she contends she was told to make copies while other team members read the paper.

On May 10, Rodriguez, Plaintiff, and a human resources staffer met to discuss Plaintiff's performance and insubordination (Plaintiff disputes this).  On May 30 Rodriguez, who had been transferred to another position, emailed Plaintiff with an attachment containing the names, addresses, and social security numbers of various Road Home applicants.  This material was considered "Personally Identifiable Information" ("PII") and was to be kept confidential per ICF's Code of Ethics, which Plaintiff had been given a copy.  Plaintiff contends there were no social security numbers included in the email attachment.

During the summer of 2007, Plaintiff came into possession of a 600-page document she thought was an invoice from ICF to the State of Louisiana.  In July, Plaintiff met with the Orleans Parish District Attorney about possible fraud within the Road Home Program and gave him a copy of the document.  The district

4

attorney then forwarded the allegations to the FBI and the Louisiana Legislative Auditor. Plaintiff claims she told ICF she was taking these actions; ICF claims she did not. No charges were filed as a result.

On September 7, 2007, ICF discovered Plaintiff had sent the May 30 email containing the PII to her sister. After an investigation, Plaintiff was either placed on administrative leave or terminated on September 12. She was officially terminated on September 18.

On November 15, 2007, Plaintiff filed this suit in the 19th Judicial District Court seeking damages for alleged racial and gender discrimination and harassment, retaliation, and reprisal for her whistle-blowing activities. (Doc. 1-1). Defendants removed to this Court.


## Summary of the Arguments

In its motion, ICF contends first that some of Plaintiff's claims are time-barred and that she failed to satisfy her pre-litigation notice requirements under the Louisiana Employment Discrimination Law ("LEDL"). Plaintiff counters that timely filing an EEOC charge and receiving a right to sue notice suspends prescription on her claims and that she has satisfied all pre-litigation notice requirements.

Second, ICF asserts Plaintiff's discrimination claims fail as a matter of law to the extent they are not based on ultimate employment actions and that Plaintiff cannot meet her burden in showing her termination was due to discrimination.

5

Plaintiff contends a reassignment of duties can constitute an adverse employment action. As to her termination, Plaintiff claims there is a genuine dispute as to whether ICF had actually discovered the email to her sister before firing her or not. She also claims she can prove racial animus was involved in her termination.

Third, Defendant claims Plaintiff's harassment claims fail as a matter of law. ICF asserts Plaintiff has no evidence that any remarks or actions by Mr. Santucci, Ms. Brower, or Mr. Mitchell, with the exception of the "lick you all over" comment, were based on her race and/or gender.[4] Further, she cannot establish that the behavior was both objectively and subjectively severe or perverse such as to alter a term, condition, or privilege of her employment. Even if she could show these things, ICF contends they took prompt remedial action and Plaintiff unreasonably failed to take advantage of corrective opportunities provided by ICF. Plaintiff counters that evidence of harassment must be made on a totality of the circumstances and is not appropriate for summary judgment. Further, she argues there is evidence to show she did follow the proper protocol in reporting the harassment and that ICF should not be allowed to assert the affirmative defense it took remedial action—and that if it is allowed to, summary judgment on this ground would be inappropriate.

---

[4] With one exception: Defendant concedes that Mr. Mitchell's "lick you all over" comment was likely motivated by Plaintiff's gender.

Case 3:07-cv-00931-JJB -SCR   Document 115   11/15/11   Page 6 of 24

Fourth, Defendant claims Plaintiff's Title VII retaliation claims fail as a matter of law in that she cannot establish a prima facie case and that, even if she could, she cannot prove ICF's legitimate, non-retaliatory reasons are a pretext for retaliation. Plaintiff counters she has established a prima facie case and that Defendant has not shown a legitimate, non-retaliatory reason for her termination.

Fifth, Defendant contends Plaintiff cannot establish any of the four elements necessary to prevail as a whistleblower. Plaintiff avers she has established enough evidence to move to trial on the issue.

Finally, Defendant claims Plaintiff's claims for intentional infliction of emotional distress and abuse of rights under Louisiana Civil Code article 2315 as they are pre-empted by more specific statutory remedies. In the event Plaintiff is allowed to bring them, Defendant argues Plaintiff cannot establish the elements of intentional infliction and the abuse of rights doctrine is only implicated where a property or contractual interest is affected, which Plaintiff does not allege. Plaintiff contends that an employer's continued inaction can give rise to an intentional infliction claim and that it is for the trier of fact to decide the nature of the conduct and damages involved. Plaintiff also argues she has established the elements for an abuse of rights claim.

## **Standard of Review**

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine dispute as to any material fact and that

7

the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets the initial burden of showing there is no genuine dispute as to material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine dispute for trial. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). The Court notes that on two occasions the magistrate judge has sanctioned Plaintiff for discovery violations. First, for failing to produce a tape recording of a meeting with George Rodriguez and Renee Brinkhaus, the magistrate judge prohibited Plaintiff from "supporting any of her claims to the extent they are based on the actions, treatment/mistreatment or statements by George Rodriguez." (Doc. 66). Second, for failing to comply with a discovery order requiring a streamlined and responsive answer to Defendant's Interrogatory No. 4, the magistrate judge prohibited Plaintiff from using any statements made in her April 17 amended answer, with specific exceptions noted in the ruling. (Doc. 101). The Court will note when these rulings apply to the evidence throughout this Ruling.

8

## Discussion

A) <u>Plaintiff's Discrimination Claims</u>

In order to succeed on a claim of race or gender discrimination, Plaintiff must establish that she was: 1) a member of a protected class, 2) qualified for the position at issue, 3) was discharged or suffered some adverse employment action, and 4) treated less favorably than similarly situated individuals who were not members of her protected class. *McCoy v. City of Shreveport*, 492 F.3d 556-67 (5th Cir. 2007). If she makes this showing, the burden shifts to the Defendant to show a legitimate, non-discriminatory reason for the action. *Id*. at 557. This is a burden of production, not persuasion, and does not involve credibility assessment. *Id*. If Defendant does this, the burden will shift back to Plaintiff to show this reason is merely a pretext for a discriminatory or retaliatory purpose. *Id*. To carry this burden, Plaintiff must rebut the legitimate reason given by Defendant. *Id*. Defendant contends all but one of Plaintiff's allegations of discrimination fail because they do not arise to an adverse employment action. As for her termination, Defendant claims she cannot show it was a pretext for a discriminatory purpose. The Court agrees with Defendant.

It is well-settled in the Fifth Circuit that, in order to rise to the level of an adverse employment action, an action must amount to an ultimate employment decision such as hiring, granting leave, discharging, promoting or compensating. *Id*. at 559. Plaintiff points out that a discriminatory reassignment may constitute an adverse employment action when it involves a "major change in

9

compensation, duties, or responsibilities." *Fuentes v. Postmaster Gen. of the United States Postal Serv*., 282 Fed. Appx. 296, 301 (5th Cir. 2008). A transfer can be a demotion" if the new position proves objectively worse -- such as being less prestigious or less interesting or providing less room for advancement." *Forsyth v. City of Dallas*, 91 F.3d 769 (5th Cir. 1996). The Court notes that the *Forsyth* Court also made clear that "a plaintiff's subjective perception that a demotion has occurred is not enough." *Id*. at 774.

The Court finds that Plaintiff was not transferred or reassigned from her position. Her salary and title did not change. And while her duties were modified, the Court finds that under the circumstances surrounding the Road Home Program—just as with any startup—this is to be expected. Further, Plaintiff has not shown how any alleged new position was objectively worse: the only thing that changed was the assignments she was given. This does not rise to the level of an adverse employment action. *Washington v. Veneman*, 109 Fed. Appx. 685, 689 (5th Cir. 2004). As for her being stripped of managerial duties, the Court finds she was not hired to manage people. When asked at her deposition whether she was hired to supervise people, Plaintiff answered she "was hired to monitor the advisors . . . and the monitor the processes at that particular office." (Doc. 93-1 at 5). Monitoring is not supervising. Plaintiff admits as much in the next exchange: "Q: All right, there's a difference between monitoring the processes and monitoring or supervising the people, in other words, being somebody's boss. Were you the boss of the [advisors]? A: I was

not the boss, but I had to monitor their work." (Doc. 93-2 at 7). She was not managing people, so there were no managerial duties for her to have had stripped.

As for her termination, which was an adverse employment action, Plaintiff has not met her burden of showing ICF's nondiscriminatory reason is merely pretext for a discriminatory purpose. Plaintiff claims she was initially terminated for an email to her father, not the email to her sister that contained the PII. She asserts ICF's claims to the contrary show they concocted this story about the email to her sister after the fact to justify her termination. Her deposition contradicts this account. In her termination meeting with Mr. Tighe and his associates, it is clear from her deposition that he asked about the email to her sister: "Q. Did he ask you if you had sent this [email to her sister]? A. He did." (Doc. 93-2 at 6). This clearly shows ICF was aware of the email at the time of her termination and thus Plaintiff's argument that there is a genuine dispute as to ICF's nondiscriminatory reason for firing her falls short.

The Court further finds there is no genuine dispute about pretext under the mixed-motive theory, which allows for a finding of pretext even when the defendant's nondiscriminatory reason is true if the reason "is only one of the reasons for its conduct and another motivating factor is the plaintiff's protected characteristic." *Carthon v. Johnson Controls, Inc*., 100 Fed. Appx. 993 (5th Cir. 2004). Plaintiff contends her race or gender was such a factor. As evidence, she points to the posting of her picture in the lobby of the building and her

11

supervisor Mr. Santucci's reasons for recommending termination. As to the former, Plaintiff presents evidence that it was not regular practice to post terminated employees' pictures in the lobby. While the Court is skeptical this is relevant, as it occurred after she was terminated, Plaintiff does not present evidence that she was treated differently from similarly situated employees, specifically that ICF posted the pictures only of women or African Americans once terminated. As for Mr. Santucci's recommendation, it was based on three things: a poor evaluation by a co-worker, complaints by white co-workers who were upset at Plaintiff's criticisms of the program, and Plaintiff's departure during a meeting and subsequent multi-day absence. (*See* Doc. 83-22 at 86-116). Plaintiff has not shown any connection between this and her race or gender.

The Court finds there is no genuine dispute as to material fact regarding Plaintiff's discrimination claims and that Defendant is entitled to judgment as a matter of law. Therefore, summary judgment on these claims is granted.


B) Plaintiff's Harassment Claims

To establish a claim for harassment, Plaintiff must show: 1) she belongs to a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment was based on her gender or race; and 4) the harassment was sufficiently severe or pervasive to have affected a term, condition, or privilege of employment; 5) if the harasser is a co-worker, the plaintiff must show the employer knew or should have known of the harassment and failed to stop it.

12

*Celestine v. Petroleos de Venz. SA*, 266 F.3d 343, 353 (5th Cir. 2001). If the harasser is a supervisor, Plaintiff only need establish the first four elements. If she does, Defendant will be vicariously liable unless it can establish 1) that it exercised reasonable care to prevent and correct promptly any harassing behavior and 2) that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities presented by Defendant or to avoid harm otherwise. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). To affect a term, condition, or privilege of employment, it must be severe or pervasive enough to create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). The "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993). The Supreme Court has held that a hostile work environment is determined by looking at "all the circumstances, including the frequency of the discriminatory conduct, its severity; whether it unnecessarily interferes with an employee's work performance." *National Passenger Railroad Corporation v. Morgan*, 536 U.S. 101 (2002). The Court finds Plaintiff cannot meet her burden for either racial or sexual harassment.

*1) Racial Harassment*

Plaintiff alleges Ms. Brower, Mr. Santucci, and Mr. Rodriguez engaged in the following acts of race-based harassment:

1. Making a comment that she spoke differently (Santucci);

Case 3:07-cv-00931-JJB -SCR   Document 115   11/15/11   Page 13 of 24

2. Making a comment that individuals like her don't drive cars like she has;
3. Making a comment that she did not look like [Brower] expected, nor did she sound like she sounds;
4. Instructing staff members not to follow her directions and to avoid her;
5. Excluding her from meetings;
6. Reassigning her to different duties, stripping her of managerial duties and giving her job duties to white co-workers;
7. Assigning her a redundant work project;
8. Giving her only two hours to complete a project it took twelve people to complete.
9. Threatening to reprimand her for unsubstantiated reasons;
10. Posting her picture at the security desk after her termination, which had not been done for any white employee.

This occurred over the course of her employment, just less than one year. When looking at the totality of the circumstances, the Court finds the above instances, while they engendered offensive feelings in the Plaintiff, were not sufficiently severe or pervasive such as to alter a term, condition, or privilege of employment. Only the first three on the list above have any tinge of racial harassment, and the Court finds these fall far short of the requirements of harassment. The only case Plaintiff cites on this topic includes racial epithets that are far more severe and pervasive than what she alleges. *Charles v. Jet Blue Airways Corp.*, 2009 U.S. Dist. LEXIS 13341 (E.D.LA 2000). Overall, though Plaintiff seems to have had difficulty while working at ICF, she does not present evidence to support her claims that any harassment was based on her race and that, if it was, it was severe or pervasive such as to alter a term, condition, or privilege of her employment.

14

As there is no genuine dispute as to this material fact, summary judgment is granted.

*2) Sexual Harassment*

Plaintiff alleges the following instances of sexual harassment, all at the hands of Mr. Mitchell:

1. Asking her out to dinner while ICF employees were staying at a hotel in December, 2006;
2. Staring at her for an extended period of time through her office window;
3. Singing a song "I'm not Lisa" while walking behind her;
4. Telling her she looked good enough to eat;
5. Telling her he wanted to take her to Baskin Robbins so he could lick her all over.

Defendant argues only the last two were made because of her gender. The Court finds a reasonable jury could find that Mr. Mitchell's comments and actions were based on Plaintiff's race. However, because Plaintiff cannot show these actions were severe and pervasive enough to affect a term, condition, or privilege of employment, this claim must fall.

While the Court sympathizes with Plaintiff for the boorish behavior of Mr. Mitchell, the case law of this circuit is clear that merely boorish behavior does not rise to the level of severe or pervasive. *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (finding the that over the course of one and a half years, a coworker 1) made one remark about another employee's body; 2) once slapped plaintiff on the rear end with a newspaper; 3) "grabbed or brushed" against plaintiff's breast and rear end; 4) once held her cheeks and tried to kiss her; 5) asked her to come in early so they could be alone; and 6)

15

once stood in the door of the bathroom while she was washing her hands, did not rise to the level of severe or pervasive to alter the terms and conditions of her employment); *See also Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871 (5th Cir. 1999) (holding conduct over almost two years, a co-worker told plaintiff "your elbows are the same color as your nipples," that she had big thighs while simulating looking under her dress, stood over her desk and tried to look down her dress, and said "here's your seat" motioning to his lap when she came in late for a meeting, while "boorish, were the equivalent of an epithet that engenders offensive feelings"). The Court finds the allegations in this case, if true, are not as severe or pervasive as those in the case law. Therefore, there is no genuine dispute as to material fact and summary judgment is granted.

C) Plaintiff's Retaliation Claims

Defendant claims Plaintiff cannot make a prima facie case for her retaliation claims and that, to the extend she can, ICF has a legitimate, non-retaliatory reason for terminating her. To establish a prima facie case of retaliation, Plaintiff must show that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action. *Aryian v. Wal-Mart Stores Texas, LP*, 534 F.3d 473, 484 (5th Cir. 2008). It is unlawful for an employer to discriminate an employee:

Case 3:07-cv-00931-JJB -SCR   Document 115   11/15/11   Page 16 of 24

. . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C §2000e-3(a). If Plaintiff is able to make her prima facie case, under the *McDonnell Douglas* burden-shifting framework, the burden shifts to the Defendant to offer proof of a legitimate, non-retaliatory reason for the termination. *Hernandez v. Yellow Transp., Inc.,* 641 F.3d 118, 129 (5th Cir. 2011). Upon doing so, the burden shifts back to the Plaintiff to show that but for the Title VII-protected activity, she would not have been terminated. *Id*. The parties disagree as to whether the pretext framework or the mixed-motive framework is to apply in this case. The use direct evidence is no longer necessary in order for a Plaintiff to employ the "mixed-motive" analytic framework. *Smith v. Xerox*, 602 F.3d 320, 327 (5th Cir. 2010).[5] Under *Xerox*, the district court is to decide "at some point in the proceedings" whether a case involves mixed motives. To do this, the court must have before it "substantial evidence supporting a conclusion that both a legitimate and an illegitimate motive" may have factored into the decision to terminate. *Id*. at 333. Evidence is "substantial" if it is "of the quality and weight that reasonable and fair-minded" people could reach different conclusions. *Nunley v. City of Waco*, 2011 WL 3861678 at *5 (5th Cir. 2011). In the event of such a finding, a defendant, upon plaintiff's prima facie showing, would have to not only present a legitimate, non-retaliatory reason for the termination, but would

---

[5] The *Xerox* case came down after parties had filed their briefs.

17

also have to show "it would have made the same [adverse employment] decision even without consideration of the prohibited factor." *Xerox*, 602 F.3d at 333.

However, even under this framework, the ultimate burden of showing but-for causation remains on the plaintiff. *Nunley* at \*5 ("Thus, our decision in *Xerox* did not dispense with this final "but for" requirement for avoiding summary judgment."). In short, the only thing the mixed motive analysis does is increase the bar for a defendant to reach before the ultimate burden of proving but-for causation reverts to the plaintiff.

The Court will pretermit the determination of whether Plaintiff has not only made a prima facie showing but done it in such a way as to merit a mixed motive analysis. The reason for this is that the Defendant meets the higher burden and the Plaintiff has not shown that but-for the prohibited act, she would not have been terminated.

As for Defendant's burden, ICF has offered proof of legitimate, non-retaliatory reasons for terminating her. Defendant has offered proof that Plaintiff sent an email containing PII of Road Home clients to her sister. Their policy prohibited such behavior and Plaintiff was aware of that. Further, she had been issued a written warning concerning insubordination in refusing to report to work in Baton Rouge. The Court finds Defendant has carried its burden of showing that it would have terminated her for violating the policy against sending PII information even if Plaintiff had not filed an EEOC complaint five months prior and complained to various elected officials two months prior. Thus, the burden

18

shifts back to Plaintiff to show that but-for her protected activities, she would not have been terminated. In her Opposition and later filings, Plaintiff has not offered any evidence that, but-for her actions, she would not have been terminated. As the Court finds there is not enough of such evidence in the record, it finds there is no genuine dispute as to material fact on Plaintiff's retaliation claim and summary judgment is granted.

D) <u>Plaintiff's State Law Claims</u>

    1) *Reprisal and Louisiana's Whistleblower Statute*

The Louisiana Whistleblower statute provides, in part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. R.S. § 23:967. While the Louisiana Supreme Court has not interpreted this statute, there is consensus that a plaintiff is required to prove the employer committed an actual violation of state law, not just a good faith belief that a violation has occurred. *Murray v. Louisiana*, 2011 WL 703653 (M.D. La. 2011);

*Puig v. Greater New Orleans Expressway Comm'n*, 00-924 (La. App. 5 Cir. 10/31/00); 772 So. 2d 842; *Hale v. Touro Infirmary*, 04-0003 (La. App. 4 Cir. 11/3/04); 886 So. 2d 1210; *Accardo v. Louisiana Health Services & Indem. Co*., 05-2377 (La. App. 1 Cir. 6/21/06); 943 So. 2d 381.  Additionally, the Court finds the elements employed by the Louisiana Fourth Circuit in Hale persuasive.  In *Hale*, the court found a plaintiff must show: (1) the defendant violated state law; (2) she informed defendant of the violation; (3) she refused to participate in the violation or threatened to disclose the practice; and (4) she was fired as a result of her refusal or threat.  *Hale*, 886 So. 2d 1216.

    The Court finds Plaintiff has satisfied only one of these elements.  Due to the sanctions imposed by the magistrate judge (docs. 66, 101), Plaintiff is limited in the evidence she can present to meet her burden.  Acknowledging this limitation, Plaintiff presents the following evidence: that she came into possession of a 600-page document she believed was an ICF invoice to the state, that she met with the Orleans Parish district attorney to express her concerns about "padding the books" by ICF, and that she gave the district attorney the document.  (Doc. 107 at 6).  This is not enough evidence to avoid summary judgment.  Plaintiff has done nothing beyond making conclusory allegations of a state law violation: there is no evidence that the alleged invoice was actually submitted to the state or that the information contained therein was false.  And while she does present evidence, in her affidavit, that ICF knew she had contacted authorities, she does not present evidence that she threatened to

20

tell anyone about this violation or that she was fired for doing so. Therefore, the Court finds Plaintiff has not met her burden of showing a genuine dispute as to material fact on the issue of her whistleblower claim and summary judgment is granted to Defendant on this claim.

2) *Intentional Infliction of Emotional Distress ("IIED")*

Defendant contends Plaintiff's claim under the Civil Code for IIED is derivative of her claims under LEDL and is thus supplanted by the more specific statutes and should be dismissed. In the alternative, Defendant contends Plaintiff has not established the elements for IIED. In her opposition, Plaintiff does not address the derivative claims argument. As the Court finds Plaintiff has not established the elements for IIED, it pretermits the issue of whether Plaintiff would be able to bring these claims.

To succeed under this theory, Plaintiff must establish three elements: (1) extreme and outrageous conduct by the Defendants; (2) causing severe emotional distress by Plaintiff; and (3) the Defendants desired this outcome or knew it was certain or substantially certain to result. *White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991). Defendants have asserted there is insufficient proof of any of the three elements. As the nonmovant bears the burden of proof at trial, the burden shifts to Plaintiff to produce evidence or designate specific facts showing the existence of a genuine dispute for trial.

Plaintiff has not met this burden on the first element: though she alleges the actions were extreme and outrageous, she does not point to evidence that is

Case 3:07-cv-00931-JJB -SCR   Document 115   11/15/11   Page 21 of 24

"so extreme in degree, as to go beyond all possible bounds of decency . . . [l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Id*. The evidence she puts forward does not rise to the level of that in the case law presented by Defendant, which all shows relatively extreme behavior that did not satisfy the first element in the respective cases. Further, Plaintiff provides no evidence beyond conclusory statements to show ICF intended to cause her severe emotional distress or that they should have known it was certain to result. And while the Court notes that continued inaction by an employer has not been foreclosed as a source of an IIED claim in Louisiana,[6] Plaintiff has not produced sufficient evidence to justify its use—in fact the evidence suggests Defendant acted promptly to each complaint. As there is no genuine dispute as to material fact, summary judgment is granted.

   *3) Abuse of Right*

   As with the IIED claim, Defendant contends the Abuse of Right claim is derivative and should be dismissed. Additionally, Defendant argues the doctrine does not apply in situations where an employer exercises its right to set working conditions and terminate at-will employees. (Doc. 67-2 at 39). As the Court agrees with this second argument, it again pretermits the derivative claim question.

---

[6] The case Plaintiff cites, *Brown v. Vaughn*, 589 So. 2d 63 (La. 1991) is incorrect for two reasons. First, it is a case from the Louisiana First Circuit, not the Louisiana Supreme Court. Second, the case cited does not stand for the proposition stated by Plaintiff: it is s sexual harassment case; IIED is not mentioned in the case, much less the statement of law cited by Plaintiff. The Court thinks Plaintiff must have meant to cite to *Bustamento v. Tucker*, 607 So. 2d 532, (La. 1992), another sexual harassment case. In *Bustamento*, the Louisiana Supreme Court made the "continued inaction" statement in a footnote, citing to an Arizona Supreme Court case.

Case 3:07-cv-00931-JJB -SCR   Document 115   11/15/11   Page 22 of 24

Louisiana's Abuse of Right doctrine is employed primarily in contract and property rights cases. It may provide a remedy to a plaintiff if one of the following conditions is met: (1) rights were exercised for the exclusive or predominant purpose of harming another; (2) rights were exercised in the absence of a serious and legitimate interest that is worthy of judicial protection; (3) rights were used in violation of moral rules, good faith, or elementary fairness; or (4) rights were exercise for a purpose other than that for which they were granted. *Deus v. Allstate, Ins. Co.*, 15 F.3d 506, 520 (5th Cir. 1994). Plaintiff incorporates her argument that ICF's reason for firing her was a pretext for a discriminatory purpose. She does not address case law from this circuit, indeed from this district, that declines to apply this doctrine to working conditions and termination in an employment setting. *See Escousse v. State Farm Mut. Auto Ins. Co.,* 2000 WL 1298813 at *2 (M.D. La. 2000) (Duval, J.). The Court agrees with Defendant that the abuse of rights doctrine does not apply in this situation.

As there is no genuine dispute as to these claims, summary judgment is granted.

E) <u>Prescription and Plaintiff's Pre-Litigation Notice Requirements</u>

As the Court has granted summary judgment in favor of Defendant on all of the claims, the issues of prescription and pre-litigation notice are pretermitted.


<u>**Conclusion**</u>


23

Case 3:07-cv-00931-JJB -SCR   Document 115   11/15/11   Page 23 of 24

Accordingly, the Court hereby GRANTS Defendant's Motion (doc. 67) on all claims. Defendant's request for attorney's fees related to the whistleblower claim is DENIED.

Signed in Baton Rouge, Louisiana, on November 14, 2011.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**